UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| | |
|---|---|
| AQUA-CHEM, INC., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:16-cv-553 |
| v. ) | |
| ) | Judge Mattice |
| BARIVEN, S.A.*, et al.*, ) | Magistrate Judge Guyton |
| ) | |
| *Defendants*. ) | |
| ) | |

# ORDER

Before the Court is Defendant PDVSA Services, B.V.'s Renewed Motion to Dismiss. (Doc. 26). For the reasons stated herein, Defendant's Motion will be **DENIED**.

## I. BACKGROUND

Plaintiff Aqua-Chem, Inc., filed its Complaint on September 12, 2016 against Defendants PDVSA Services, B.V., ("PDVSA"), and Bariven, S.A. ("Bariven"), alleging that Defendants breached the Parties' contract for the sale of machine supplies valued at $481,390.50. (Doc. 1 at 3–7). PDVSA, a Dutch corporation with its principal place of business in The Hague, the Netherlands, filed its original Motion to Dismiss on November 4, 2016.[1] (Doc. 13). Therein, PDVSA argued that, pursuant to Fed. R. Civ. P. 12(b)(1), this Court lacked subject-matter jurisdiction due to the Parties' mandatory arbitration agreement. It also argued that Plaintiff's Complaint should be dismissed for insufficient service of process under Fed. R. Civ. P. 12(b)(5). (Doc. 14 at 4–9). Plaintiff conceded that it had yet to properly serve PDVSA, but petitioned the Court to grant it an extension of time in which to do so. (Doc. 21 at 1–4). On February 15, 2017, the Court issued an Order

---

[1] Bariven, a Venezuelan corporation, has still not made an appearance in this case. The implications of Bariven's failure to appear will be discussed at greater length, *infra* Part II.B.

granting Plaintiff's requested extension and denying PDVSA's Motion to Dismiss with leave to refile.[2] (Doc. 24 at 1–3).

On May 26, 2017, Plaintiff filed a document entitled "Notice of Filing," in which it informed the Court that it had successfully served both PDVSA and Bariven. (Doc. 25 at 1–4). In lieu of filing an Answer, Defendant PDVSA filed its Renewed Motion to Dismiss, (Doc. 26), asserting two main arguments. First, it again petitions the Court to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), due to the Parties' mandatory arbitration agreement. (Doc. 27 at 4–9). Second, it argues that Plaintiff's Complaint should be dismissed for insufficient service of process under Fed. R. Civ. P. 12(b)(5). Quizzically, however, PDVSA makes no arguments regarding the insufficiency of service of process on itself, but rather asserts that Plaintiff has not properly served Bariven.[3] (Doc. 27 at 9–11).

Plaintiff does not contest that it is subject to the Parties' arbitration clause. Instead, it spends the majority of its response in opposition outlining its attempts to effectuate service of process on Bariven. (Doc. 28 at 3–11). The Court will not recount Plaintiff's efforts at length, as such details are immaterial to the disposition of the instant Motion. Suffice it to say that Plaintiff's exhaustive efforts have largely been thwarted by the

---

[2] The Court specified that it "expresse[d] no opinion on the merits of Defendant PDVSA's argument that this Court lacks subject matter jurisdiction over Plaintiff's claims . . . or on the merits of Plaintiff's argument that the Court should stay this case pending arbitration." (Doc. 24 at 3 n.2).

[3] PDVSA argues that "[r]egardless the [sic] Court's ruling regarding whether and when Plaintiff served PSBV, the Court should reject Plaintiff's assertion that it served Bariven through its subsidiaries PSBV or PSI." (Doc. 27 at 9). Other than this perfunctory reference to the sufficiency of service of process on itself, Defendant PDVSA has failed to disclose any facts to establish that Plaintiff has not complied with the Hague Service Convention as to PDVSA. Accordingly, to the extent PDVSA petitions the Court to dismiss the claims against it for insufficient service of process, its Motion is **DENIED**. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995))).

Venezuelan Central Authority's apparent refusal to serve process on Bariven in accordance with the terms of the Hague Service Convention,[4] Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. (*See* Doc. 28 at 3–11). If their efforts thus far are found insufficient, Plaintiff petitions the Court for assistance in serving Bariven through 28 U.S.C. 1608. (*Id.* at 10–11). Finally, Plaintiff argues that in the event this Court finds that it has properly served Bariven, the Court should exercise its discretion to stay this case pending arbitration rather than dismissing it.[5] (*Id.* at 11–15).

## II.  ANALYSIS

PDVSA's Renewed Motion to Dismiss is rife with procedural flaws. Plaintiff, however, is not without fault, as it has committed its own procedural missteps in the prosecution of this case. The Parties' errors will be discussed in terms of PDVSA's assertion that Plaintiff's Complaint should be dismissed for lack of subject-matter jurisdiction and for insufficient service of process.

### A.  Subject-Matter Jurisdiction

Defendant PDVSA first argues that, because the Parties entered into a mandatory arbitration agreement, this Court lacks subject-matter jurisdiction to hear Plaintiff's claims. (Doc. 27 at 4–9). PDVSA, however, has failed to cite any authority in support of the proposition that the presence of a mandatory arbitration clause divests this Court of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Instead, PDVSA discusses the Federal Arbitration Act's preference for rigorous enforcement of arbitration agreements, and the Sixth Circuit's four-prong test for effectuating that preference. (*Id.*).

---

[4] Bariven is owned by the Venezuelan government.

[5] PDVSA filed a reply brief, largely reiterating its previous arguments. (*See generally* Doc. 29).

Mindful of its independent obligation to ensure that it has subject-matter jurisdiction, the Court has engaged in a detailed review of the case law on this subject. While the United States Court of Appeals for the Sixth Circuit has not weighed in on this issue in the context of the Federal Arbitration Act, many other courts have done so with deeply mixed results. Consistent with PDVSA's position, a few district courts have found that a case may be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) due to a binding arbitration clause. *See, e.g.*, *Mann v. Equifax Info. Servs., LLC*, 2013 WL 3814257 at \*7 (E.D. Mich. July 22, 2013); *Rosehoff Ltd. v. Cataclean Ams. LLC*, 2013 WL 2389725 at \*5 (W.D.N.Y. May 30, 2013); *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs., Inc.*, 2013 WL 1899689 at \*2 (S.D. Fla. May 7, 2013); *Melendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 939 F. Supp. 2d 88, 90 (D.P.R. 2013). Significantly more courts, including at least two Circuit Courts of Appeals, however, have found that Fed. R. Civ. P. 12(b)(1) is an improper procedural mechanism for enforcement of an arbitration clause. *See Johnson v. Orkin, LLC*, 556 F. App'x 543, 544–45 (7th Cir. 2014); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272 (3d Cir. 2004); *Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991); *see also Cheraghi v. MedImmune, LLC*, 2011 WL 6047059 at \*2 (D. Md. Dec. 5, 2011); *Minnesota Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F. Supp. 2d 896, 904 n.10 (D. Minn. 2011); *Bionumerik Pharm., Inc. v. Nair*, 2000 WL 33348187 at \*1 (W.D. Tex. Mar. 22, 2000); *New Process Steel Corp. v. Titan Indus. Corp.*, 555 F. Supp. 1018, 1020 (S.D. Tex. 1983).

Basic jurisdictional principles, the text of the Federal Arbitration Act, and persuasive authority from the Supreme Court and the Sixth Circuit demonstrate that the latter approach is the more reasonable interpretation of the law. First, and most importantly, the Parties cannot alter this Court's authority to hear a case via contract.

*Valinski v. Detroit Edison*, 197 F. App'x 403, 406 (6th Cir. 2006) ("However, parties cannot consent to subject matter jurisdiction, nor can they waive it."). In the present case, the Parties are diverse and the amount in controversy exceeds $75,000. (Doc. 1 at 2). The Court, therefore, has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, even in the face of a binding arbitration agreement. *New Process Steel*, 555 F. Supp. at 1020 ("There is no basis in the case law to support the defendants' assertion that simply because a matter may be referable to arbitration, the Court is deprived of jurisdiction. In this case, the well-pleaded allegations of the plaintiff's complaint sufficiently allege 'diversity of citizenship' jurisdiction and defendant's motion to dismiss should be denied.").

The plain text of the Federal Arbitration Act ("FAA") dictates the same result. The FAA reads, in relevant part,

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. By requiring that the district court "have jurisdiction under Title 28" before it may compel arbitration, the FAA clearly indicates that subject-matter jurisdiction and agreements to arbitrate must be analyzed separately. *See Minnesota Supply Co.*, 822 F. Supp. 2d at 904 n.10 ("To dismiss a federal action for lack of subject-matter jurisdiction *because* the dispute is subject to a binding arbitration agreement mistakenly assumes that an arbitrable dispute, by definition, falls outside the realm of federal jurisdiction. Moreover, the fact that the parties have contractually agreed to resolve any particular dispute by arbitration says nothing about whether that dispute would satisfy federal

5

question, diversity or any other basis of subject-matter jurisdiction.") (emphasis in original).

The Supreme Court of the United States' opinion in *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), lends further support this conclusion. Therein, the Court held that a forum-selection clause does not render venue improper in a non-designated forum.[6] *Id.* at 577 ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."). So too here. Fed. R. Civ. P. 12(b)(1) permits the Court to dismiss a case for "lack of subject-matter jurisdiction." Whether this Court has subject-matter jurisdiction "depends exclusively" on whether Plaintiff's Complaint satisfies the requirements of federal jurisdiction laws, here 28 U.S.C. § 1332. As in *Atlantic Marine*, § 1332 says nothing about an arbitration clause.

Finally, the Sixth Circuit addressed a similar issue, albeit in the context of the Labor Management Relations Act, in *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281 (6th Cir. 2014). In *Teamsters*, the defendant moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) because the Parties' Collective Bargaining Agreement contained an arbitration clause. The Sixth Circuit ultimately held that the defendant's motion was "more properly construed as a motion to dismiss under Rule 12(b)(6)." *Teamsters*, 748 F.3d at 286. It further explained that

> [s]ubject-matter jurisdiction is not a merits question. "It refers to a tribunal's power to a hear a case." *Morrison v. Nat'l Austl. Bank Ltd.*, 561

---

[6] The Court recognizes that the instant case involves an arbitration agreement, not a forum-selection clause. Many courts, however, have recognized that arbitration agreements are considered a type of forum-selection clause. E.g., *Johnson*, 556 F. App'x at 544.

6

> U.S. 247, 130 S. Ct. 2869, 2877, 177 L.Ed.2d 535 (2010) (internal quotation marks omitted). Subject-matter jurisdiction "presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief." *Id.* In this lawsuit, UPS argues that the Union is prohibited from filing suit in this court because the Union has not exhausted the internal grievance process under the CBA. This is a 12(b)(6) claim.

*Id.* Unlike in *Teamsters*, Defendant PDVSA has not alternatively moved for dismissal under Fed. R. Civ. P. 12(b)(6). Accordingly, PDVSA's Renewed Motion to Dismiss will not be treated as such.

While some courts have described this issue as purely "academic," *see, e.g.*, *Williams v. Home Properties, L.P.*, 2015 WL 3972966 at *1 (D. Md. June 29, 2015), the Court finds that, given the above-cited authority, it would be an abdication of its duties to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) where subject-matter jurisdiction so clearly lies. Defendant's Renewed Motion to Dismiss, therefore, will be **DENIED** to the extent it seeks dismissal for lack of subject-matter jurisdiction. If PDVSA wishes to enforce its arbitration clause under the FAA, it may file a Motion to Compel Arbitration under 9 U.S.C. § 4 and a concurrent a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). PDVSA is cautioned, however, that in the interests of judicial efficiency, any such motion will be held in abeyance until such time as Bariven is either properly before the Court or held to be in default. *See infra* Part II.B.

### B. Insufficient Service of Process

Defendant PDVSA also petitions the Court to dismiss Plaintiff's Complaint for insufficient service of process, Fed. R. Civ. P. 12(b)(5). As stated *supra* Part I, PDVSA has failed to argue why service on PDVSA was improper, but rather argues that *Bariven* has not been properly served. Specifically, PDVSA argues that neither it nor non-party PDVSA Services, Inc. ("PSI"), may accept service of process on Bariven's behalf. (Doc. 27 at 9–

11). The Court need not reach the merits of PDVSA's agency arguments because PDVSA clearly lacks standing to assert a defense of insufficient service of process on Bariven's behalf. *See, e.g.*, *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) ("Co-defendants do not have standing to assert improper service claims on behalf of other defendants."); *see also United States v. Stewart Mech. Enter., Inc.*, 2012 WL 2312051 at *2 (W.D. Ky. June 18, 2012) ("Distler lacks standing to challenge service of process on Stewart Mechanical."). Accordingly, PDVSA's Renewed Motion to Dismiss for insufficient service of process will be **DENIED**.

The procedural problems at bar do not end here, as Defendant Bariven has yet to make an appearance nearly a year after Plaintiff filed its Complaint. This is where Plaintiff has erred. Plaintiff has taken, to put it mildly, inconsistent positions with regards to whether Bariven has been properly served. On May 26, 2017, Plaintiff notified the Court that it had served Bariven through PSI and PDVSA, Bariven's alleged general agents, on September 22, 2016 and November 7, 2016, respectively. (Doc. 25 at 2–3). But on July 10, 2017, Plaintiff filed a response in opposition to PDVSA's Renewed Motion to Dismiss arguing that service on Bariven is still "ongoing" and that "if Aqua-Chem's service efforts on Bariven are held to be insufficient, Aqua-Chem will seek the Court's assistance to serve Bariven with process pursuant to section 1608(b)(3) of the Foreign Sovereign Immunities Act." (Doc. 28 at 7, 10).

Respectfully, Plaintiff must decide whether it believes it has properly served Bariven and file an appropriate motion before the Court may proceed in this matter. In the event that Plaintiff believes that Bariven was properly served on September 22, 2016 or November 7, 2016, Bariven's time in which to file a responsive pleading has long

8

passed, *see* Fed. R. Civ. P. 12(a)(1)(A), and Plaintiff should move for default judgment.[7] At that time, Bariven, not PDVSA, may make a limited appearance to contest the sufficiency of Plaintiff's service of process.[8] If, however, Plaintiff does not believe it has sufficiently served Bariven, it must file a formal motion petitioning the Court for its assistance in serving Bariven in accordance with 28 U.S.C. § 1608(b)(3). In the interest of moving this case forward in a timely fashion, Plaintiff is **ORDERED** to file one of the above-mentioned motions **on or before September 8, 2017**. Plaintiff is hereby put **ON NOTICE** that failure to do so may result in its claims against Bariven being dismissed pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute.

### III. CONCLUSION

For the reasons stated herein, PDVSA's Renewed Motion to Dismiss, (Doc. 26), is hereby **DENIED**, and Plaintiff is hereby **ORDERED** to take action as outlined *supra* Part II.B.

**SO ORDERED** this 17th day of August, 2017.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff must comply with the Court's local rules regarding default judgment motions, which are available at http://www.tned.uscourts.gov/defjudgment.php.

[8] Given Bariven's extensive ties with PDVSA, the Court cannot imagine that Bariven does not have actual notice of this action.